UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES KEITZ,

                                Plaintiff,

                                                                       DECISION AND ORDER

-vs-

                                                                       13-CV-6284 CJS

S. KICKBUSH, OFFICIALLY & INDIVIDUALLY,
J. MATHIS, OFFICIALLY & INDIVIDUALLY,

                                Defendants.
_____

INTRODUCTION

This is an action under 42 U.S.C. § 1983 brought by Michael Keitz ("Plaintiff"), a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Collins Correctional Facility ("Collins"). Now before the Court is Defendants' motion (Docket No. [#38]) for summary judgment. The application is granted.

BACKGROUND

The following are the facts viewed in the light most-favorable to Plaintiff. At all relevant times Plaintiff was housed at Collins, where Defendant S. Kickbush ("Kickbush") was the First Deputy Superintendent for Programs and Deputy J. Mathis ("Mathis") was a drug counselor. At all relevant times Plaintiff resided in a dormitory-style housing area and attended group counseling meetings presided over by Mathis. On or about May 24, 2013, Plaintiff sent an anonymous letter to Kickbush, complaining about Mathis. Mathis learned of the anonymous letter, and spent the next week verbally berating Plaintiff's therapy group about the fact that some member of the group had complained about him.

On May 31, 2013, during a meeting between Plaintiff, Mathis and two other counselors, Plaintiff admitted, in response to questioning by Mathis, that he wrote the anonymous letter.  Later that day, during a group meeting, Mathis informed the group members that Plaintiff had written the letter, and stated that Plaintiff was a liar and a snitch.  While doing so, Mathis "screamed" and "gesticulated wildly" at Plaintiff.  Plaintiff responded by telling Mathis to "produce the letter," presumably so that he could show the other inmates that the contents of the letter were true.  However, Mathis continued to yell at Plaintiff and then ordered Plaintiff to go to his cubicle.  Shortly thereafter, upon seeing Plaintiff outside the cubicle, Mathis continued to verbally berate Plaintiff, and accused Plaintiff of "being out to get him."  Further, Mathis moved toward Plaintiff in a physically threatening manner and stated that he was "not afraid to fight," whereupon Plaintiff fled from the cubicle.  During the ensuing ten days, Plaintiff contends that he experienced "constant anxiety," though there is no contention that Mathis said anything more to Plaintiff.

On June 4, 2013, Plaintiff commenced this action.  The Complaint [#1] purports to state two causes of action based upon Mathis' conduct: 1) a First Amendment retaliation claim; and 2) an Eighth Amendment claim for cruel and unusual punishment.  In the Complaint, Plaintiff admits that he did not exhaust his administrative remedies, but contends that he was afraid to file an inmate grievance because of how Mathis might react.  The Complaint demands injunctive relief and $100,000.00 in money damages.

Shortly after filing this action, on June 19, 2013, Plaintiff filed an inmate grievance against Mathis, based upon the same alleged conduct discussed above.  *See*, Docket No. [#38-3] at pp. 4-11.  In the grievance, Plaintiff demanded an investigation of the incident and an apology from Mathis.

On January 20, 2015, Defendants filed the subject motion for summary judgment, including the required *Irby* notice. Defendants maintain that Mathis' alleged conduct, consisting of screaming and yelling at Plaintiff and threatening to fight him, cannot as a matter of law constitute a violation of the First Amendment or Eighth Amendment. Additionally, Defendants contend that Plaintiff has not alleged any personal involvement by Kickbush.

On February 4, 2015, Plaintiff responded to the summary judgment motion. Plaintiff admits that Kickbush had no personal involvement in the alleged constitutional violations, and indicates that he only named Kickbush as a defendant because he thought that he needed to because he was seeking injunctive relief. Further, Plaintiff admits that his allegations fail to establish an Eighth Amendment violation. Accordingly, Kickbush is entitled to summary judgment on all claims, and Mathis is entitled to summary judgment on the Eighth Amendment claim.

However, Plaintiff contends that his allegations are sufficient to establish a First Amendment retaliation claim against Mathis. More specifically, Plaintiff maintains that his anonymous letter to Kickbush was "protected activity," and that the totality of Mathis' conduct, including his attempt to determine who wrote the anonymous letter, his verbal tirade directed at Plaintiff, and his "attempted assault" of Plaintiff, amount to an "adverse action" sufficient to support a retaliation claim. Plaintiff contends that the summary judgment motion should therefore be denied.

Accordingly, the only issue before the Court is whether Mathis is entitled to summary judgment on Plaintiff's retaliation claim.

DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>*Retaliation Under Section 1983*</u>

The legal principles pertaining to claims for First Amendment retaliation in the prison setting are well settled:

> To state a First Amendment retaliation claim, a prisoner must demonstrate (1) protected speech or conduct,[1] (2) adverse action by the defendant, and (3) a causal connection between the two. While the filing of prison grievances is a protected activity, only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action. In making the latter determination, a court's inquiry must be tailored to the different

---

[1] For purposes of the instant motion, Defendants do not dispute that Plaintiff's letter complaining about Mathis is protected speech. *See, e.g., Guillory v. Haywood*, No. 9:13–cv–01564 (MAD/TWD), 2015 WL 268933 at *17 -18  (N.D.N.Y. Jan. 21, 2015) ("The filing of a grievance has been found to constitute protected First Amendment conduct for purposes of a retaliation claim. Inmate's verbal complaints to corrections officers and prison officials have also been found to constitute activity protected by the First Amendment.") (citations omitted). Nor do they dispute that there was a causal connection between the protected activity and Mathis' alleged response.

> circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens before a retaliatory action taken against them is considered adverse.[2] Nevertheless, a prisoner can state a retaliation claim in the absence of actual deterrence.[3] *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir.2004) ("[T]he fact that a particular plaintiff ... responded to retaliation with greater than 'ordinary firmness' does not deprive him of a cause of action.").

*Nelson v. McGrain*, — Fed.Appx. —, 2015 WL 921639 at *1 (2d Cir. Mar. 5, 2015) (internal quotation marks and some citations omitted).

Accordingly, the issue is whether all of the conduct alleged by Plaintiff, consisting of Mathis complaining about the anonymous letter writer in a group setting, yelling at Plaintiff, threatening to fight Plaintiff, and moving toward Plaintiff in a threatening manner, is sufficient "adverse action" to support a retaliation claim. Put another way, the question is whether, viewing the facts in the light most-favorable to Plaintiff, this Court can say as a matter of law that Mathis' conduct would not deter a similarly situated inmate of ordinary firmness from exercising his constitutional rights.

Defendants contend that verbal threats such as those allegedly made by Mathis are insufficient to establish retaliatory "adverse action." For support of that proposition, Defendants cite *Kemp v. LeClaire*, No. 03-CV-844S, 2007 WL 776416 at *1, 7 (W.D.N.Y. Mar. 12, 2007) (Skretny, J.), in which the Court granted summary judgment, finding that

---

[2] The "objective inquiry" into whether particular conduct qualifies as an "adverse action" "is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise." *Ford v. Palmer*, 539 Fed.Appx. 5, 7 (2d Cir. Sep. 24, 2013) (citation omitted).

[3] Here, Plaintiff was not actually deterred from making further complaints about Mathis. In that regard, while Plaintiff claims that the reason he did not exhaust his administrative remedies before commencing this action is that he was fearful of how Mathis would respond, he in fact filed an inmate grievance against Mathis, demanding an apology from him, shortly after he commenced this action. However, the Court does not consider such fact when attempting to determine whether Mathis' conduct was, objectively, sufficient to constitute an adverse action. *See, Ford v. Palmer*, 539 Fed.Appx. at 7 ("[T]he district court's reliance on the fact that Ford continued to file grievances was in error.") (citation omitted).

the following "verbal and physical threats" were not actionable:

> [Plaintiff] was told at various times that he would be hanged in his cell, that all of the bones in his body would be broken, that he would be sent to his mother in a black box, and that he would have his "black ass kicked," all because he repeatedly filed grievances against prison staff. Plaintiff further maintains that he was called a "black nigger bitch," a rat, and a "pain in the ass." He also maintains that Defendants Morris and Mezydlo told other inmates that they would not receive any favors because of Plaintiff's complaints about prison staff.

In that case the Court found that such conduct was insufficient to support a retaliation claim, *id.* at *15. District Court decisions similarly finding that verbal harassment and threats of physical violence are insufficient to establish "adverse action" in the prison setting are legion in this Circuit. *See, e.g., Mateo v. Fisher*, 682 F.Supp.2d 423, 432-433, 434 (S.D.N.Y. 2010) (Finding no "adverse action" where corrections officer twice threatened inmate with physical violence for writing grievances, including one incident where the officer entered the inmate's cell, "held his right gloved fist [to the inmate's] face, [and] threatened [him] by saying that one day he and [the inmate-plaintiff] would party.") (collecting cases).

      Nevertheless, the Second Circuit has indicated that certain verbal threats may constitute "adverse action." For example, in *Ford v. Palmer*, 539 Fed.Appx. at 7, the Second Circuit held that a prison inmate plausibly alleged "adverse action" where, after the inmate complained about a corrections officer's failure to provide him with hot water for his "Ramadan breakfast," the officer threatened to "poison" the inmate by putting "some kind of substance" in his water. The Circuit panel further indicated that to qualify as "adverse action," a correction officer's threat need not be "definite and specific," but could be

"vague," such as where the corrections officer in *Ford* did not indicate when or how he might poison or taint the inmate's water. *Id*. at *7.

In the instant case, Plaintiff indicates that Mathis was unreasonably angry at what he believed were untrue accusations made about him to his "boss." *See*, Complaint [#1] at p. 3. Specifically, after Mathis learned that someone had written an anonymous complaint against him, he engaged in "excessive tirades" concerning the letter for a week. Then, after Mathis learned that Plaintiff had written the complaint, he "screamed," to the other inmates in the group counseling session, that Plaintiff was "a liar" and that he "could prove it." *Id*. When Plaintiff challenged Mathis to produce the actual letter, presumably to show that Plaintiff had not lied about anything, Mathis told Plaintiff to go to his dorm cubicle. Later, when Mathis saw that Plaintiff had left his cubicle, the following took place:

> Mr. Mathis exited the meeting screaming "Who are you to write [his] (sic) f----ing boss?!" and that Plaintiff was "out to get [him] (sic)." As Mr. Mathis yelled he kept approaching the slowly retreating Plaintiff toward the back of the dorm. Plaintiff back up as far as he could go from the clearly enraged Defendant. Defendant then stated "...[He's] (sic) not afraid to fight, in fact ... I'll kick your ..." (sic) Mr. Mathis then started a brisk menacing approach toward this Plaintiff with fists clenched as if to attack me. The cornered Plaintiff was forced to hurdle over other inmates' cubicle separation walls to flee (running) (sic) back into the community meeting, still in progress. Mr. Mathis, in pursuit, shouted "Get back here, that's a direct order!" Plaintiff begged C.O. Bridgers, then in the meeting, to "Please tell Mr. Mathis to get away from me ... (sic) he's out of control & chasing me through the dorm." The entire dorm witnessed and heard this.

Complaint [#1] at p. 4.

Accepting Plaintiff's statements as true, as the Court must on a summary judgment motion, it appears that Mathis was hyper-sensitive to criticism and acted unprofessionally

in front of inmates and corrections staff. Nevertheless, viewing the situation objectively, the Court cannot say that Mathis' tantrum, in front of a roomful of witnesses, rises to the level of "adverse action" sufficient to support a constitutional violation. Accordingly, Mathis is entitled to summary judgment on the retaliation claim.

## CONCLUSION

Defendants' motion for summary judgment [#38] is granted and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
     April 9, 2015

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge